CHABOLLA (LE ROY v.). See Case No. 8,267.

## Case No. 2,566.

### CHABOLLA v. UNITED STATES.

[Hoff. Land Cas. 130.] [1]

District Court, N. D. California. Dec. Term, 1855.

MEXICAN LAND GRANTS—VALIDITY.

This claim must be confirmed under the ruling of the supreme court in Fremont's Case [Fremont v. U. S., 17 How. (58 U. S.) 542.]

Claim [of the heirs of Anastasio Chabolla] for eight leagues of land [called the Rancho Saujon de los Moquelemes], in San Joaquin county, rejected by the board, and appealed by claimants.

A. P. Crittenden, for appellants.

S. W. Inge, U. S. Atty.

HOFFMAN, District Judge. The grantee in this case, on the seventeenth of May, 1843, addressed a petition to the governor, representing that he had, some sixteen months previously, applied for a grant of land designated on a map, which he inclosed. This application, he stated, had been referred to General Sutter and the juzgado of the pueblo, but had been wholly neglected by them; and that in the meantime grants had been

---

[1] [Reported by Hon. Ogden Hoffman, District Judge, and here reprinted by permission.]

made to Gulnac and other foreigners, less entitled than himself to favorable consideration. He therefore prayed the governor to make him the concession as originally solicited. The governor made the usual marginal decree or order of reference for information, and the juzgado of the pueblo of San José and the secretary, Jimeno, reported favorably to Chabolla's application. On the twenty-fourth of January, 1844, the governor made his decree of concession, granting to Chabolla "eight sitios of gañado mayor on the borders of the river Cosumnes southward, and on that of the San Joaquin," the possession to be measured two leagues on the bank of the river San Joaquin and the rest in the plain running to the east. The documento or title delivered to the grantee corresponds with the decree of concession, and the fourth condition states that the land is eight leagues in extent, to be measured as above mentioned, and according to the diseño. The foregoing facts appear in the expediente on file in the archives, and in the title produced by the party, the signatures to which are duly proved. No approval by the departmental assembly appears to have been obtained, nor was juridical possession of the land given to the grantee. The usual condition of cultivation and habitation was annexed to the grant, and the question arises in this as in the Case of Fremont, "whether there has been such unreasonable delay or want of effort on the part of the grantee to fulfill the conditions as will justify the presumption that he had abandoned his claim, and is now seeking to resume it from the enhanced value of the land." [Fremont v. U. S.] 17 How. [58 U. S.] 561.

The grant was issued in January, 1844. By the deposition of Antonio M. Pico it appears that in 1846 or 1847, there were upon the rancho three hundred head of cattle and forty or fifty horses belonging to Chabolla; there was also at that time a house on the place, in which an overseer lived, with Indian servants, and corrals had been built and land put under cultivation. The witness states that he believes the cattle had been taken to the rancho from San José in 1844. Henry J. Bee, a witness whose testimony was taken in this court, states that he saw Chabolla on his place in 1846; that he was then building a house; and that in 1845 he saw him driving cattle up there. The witness visited the rancho in 1848. A house had then been built. Sulinas, the steward of Chabolla was living there, and there were cattle and horses upon the rancho bearing Chabolla's brand. The witness adds that in 1845 he did not go to the place where in 1846 he saw the house. George F. Wyman, whose testimony has also been taken since the case was appealed, states that in 1844 he saw a man named Sulinas building a house on the rancho for Chabolla, as he said. The house was situated on the south side of the

Cosumnes river. The witness also states that he was again on the rancho in 1845, and from time to time for three or four years, and that in 1848 he lived several months in Chabolla's house. In 1845 he saw cattle and horses there marked with Chabolla's brand; and in 1846–7 there were some twenty acres of land inclosed by a ditch, dug by Sulinas, who cultivated wheat, barley, etc., within the inclosure. No opposing testimony has been taken on the part of the United States. Under the facts as disclosed by these witnesses it is evident that the claimant has not only not been guilty of such a breach of the conditions as would justify the presumption that he had abandoned his claim, but on the contrary he seems to have proceeded to settle upon and cultivate his land with a diligence by no means usual with the grantees under the Mexican government. I think, therefore, that under the rules laid down by the supreme court in the case of Fremont, the objection that the conditions were not fulfilled cannot be maintained. This claim was rejected by the board for the nonfulfillment of the conditions; but one of the commissioners appears to have concurred in the decision on the ground that no proof was offered to show that the present claimants are the heirs and representatives of Chabolla, who is deceased. That objection, whatever force it may have had, is obviated by the testimony of Antonio Chabolla, a brother of the grantee, taken in this court.

The cause has been submitted without argument on the part of the United States, or the statement of any objection to the claim, except a reference to the opinion of the board as containing the grounds on which the United States rely for the rejection of the claim. It is not mentioned in the opinion of the board, or suggested on the part of the United States, that there is any difficulty as to locating the land. The grant mentions that the land is situated on the borders of the Cosumnes southward, and on those of the San Joaquin, measuring two leagues on the latter river, and the remainder of the tract on the plain to the east. The description of the land in the grant delivered to the party, in one respect differs from that contained in the decree of concession. In the former, the land is described as lying in the plain to the west of the San Joaquin. But this is evidently a clerical error, for the map of the country shows that the plain out of which the land could alone be taken lies to the east of the San Joaquin, the land to the west being a broad belt of marshy land covered with tule, and if located to the west, the grant would not touch the Cosumnes, on the borders of which to the south it is described as situated.

A decree of confirmation of the claim, to the extent of eight leagues, to be located and measured as set forth in the expediente, must therefore be entered.